

# UNITED STATES DISTRICT COURT
### for the
### Northern District of Indiana

Eric-Joshua: Mapes., Sui juris                    )
Jenelle-Mackenzie: Kelly-Mapes. , Sui Juris   )
      Plaintiff(s)                               )
                                  )
                                  )   Civil Action No. 2:22-cv-203 _____
           v                                )
                                  )
                                  )
CABLE ONE d.b.a. SPARKLIGHT, et al.   )
      Defendant(s)                              )
                                  )
                                  )
                                  )

## VERIFIED CIVIL COMPLAINT

### I. Basis for Jurisdiction

    42 U.S.C. § 1983(Civil Action for Violations of the Americans with Disabilities Title III:28 C.F.R. § 36.504 civil action under Sec.36.503 ; 28 C.F.R. § 36.504(3)(i).(ii) ; 42 U.S.C. § 12203(c) ; Civil Action For Intentional Discrimination under the deliberate indifference standard ; participating in or enjoying any benefit, service, privilege(disability right), program, facility, or activity provided or administered by the United States ( FCC ; FCC Disability Rights ; Federal Rehabilitation Act Sec 504 and Sec 508 ; Americans With Disabilities Act Title III ; 14th Amendment ; participating in or enjoying the benefits of any program or activity(internet services) receiving Federal financial assistance; ( Sparklight under FCC and ACP program ; Sec 504 and Sec 508; 14th Amendment)) ) ;42 U.S.C. § 1986 (Civil Action for Neglect to Prevent Wrongs in 42 U.S.C. § 1985( See Also Federal Elder and Disabled Exploitation and Abuse laws ; 14th Amendment) ) ; 28 C.F.R. 36.206 settlement agreement is allowed under 28 C.F.R. § 36.506 as an Alternative means of dispute resolution in settlement negotiations authorized by law 28 C.F.R. § 36.504(3)(i).(ii) to be decided what amount should be decided and awarded for the first and subsequent violations in a Federal Court under Title III of the Americans with Disabilities Act Title III of the ADA,, fundamental rights… Civil rights and under 42 U.S.C. §§ 12181-12189 et seq. .. ; 28 C.F.R. pt. 36 et seq. .. a Congressional Act that had Constitutional authority found in and under and this Court having jurisdiction pursuant to 28 U.S. Code § 94 (3) [Showing personal jurisdiction :See International Shoe v Washington, 326 US 310 (1945) ] and pursuant to S.933 — 101st Congress (1989-1990) Americans with Disabilities Act 1990 this Court also has\ subject-matter jurisdiction to allow the court to hear the claim. See U.S. Const. Art. III, Sec. 2. and Diversity jurisdiction generally permits individuals to bring claims in federal court where the claim exceeds $75,000 *and* the parties are citizens of different states. See 28 U.S.C. § 1332. ( CABLE ONE D.B.A. SPARKLIGHT employees people from different states in their services and main Corpoarte HQ is in Arizona). This Honorable Court would have subject-matter jurisdiction to hear the claim. Under federal question jurisdiction, the Disabled Plaintiffs—regardless of the value of the claim —may bring a claim in federal court if it "arises under federal law"("Americans with Disabilities Act"), including the U.S. Constitution. See 28 U.S.C. § 1331. ; Clause 2 Art VI U.S. Const. ;

- 1 -

Universal Citation: IN Code § 6-10-1-2 (2018) IC 6-10-1-2 "Internet access" Sec. 2. (a) As used in this chapter, "Internet access" means a service that enables users to connect to the Internet to access content, information, or other services offered over the Internet, without regard to whether the service is referred to as telecommunications, communications, transmission, or similar services, and without regard to whether a provider of the service is subject to regulation by the Federal Communications Commission as a common carrier under 47 U.S.C. 201 et seq. ; Title IV of the Americans with Disabilities Act (Section 255) ; 28 C.F.R. 36.206

## II. Jurisdiction

This Honorable Court has jurisdiction over this action pursuant to: 28 U.S.C. § 1343(a) (3), (4) ; 42 U.S.C. § 1983 ; U.S. Const. Art. III Sec. II ; U.S. Const. Clause 2 Art. VI ; 28 U.S. Code § 94 (3); 28 U.S.C. § 1332 ;  28 U.S.C. § 1331;  28 U.S.C. § 1332;42 U.S.C. 12203C ; 28 C.F.R. § 36.504(3)(i).(ii) ;

## III. The Parties to This Complaint

**A. Disabled Plaintiff(s)** :
        Mr Eric-Joshua: Mapes., Sui juris , , is a disabled individual that resides in the State of Indiana and was denied and interfered with accessing services of a place of accommodation and their rights in those services and has been discriminated on by this place of public accommodation's deliberate indifference and treated less favorably on the direct basis of his disabilities.

        Mrs Jenelle-Mackenzie: Kelly-Mapes. , Sui juris  is a disabled individual that resides in the State of Indiana and was interfered with accessing services of a place of public accommodation and their rights in those services , is a disabled individual that resides in the State of Indiana and was denied and interfered with accessing services of a place of public accommodation and their rights in those services and has been discriminated on by this place of public accommodation's deliberate indifference and treated less favorably on the direct basis of her disabilities.

**B. Defendant(s)** :
        At all times material, Defendant CABLE ONE d.b.a. SPARKLIGHT, et al ,any of their affiliates, associates, third parties , heirs , administrators, executors successors, employees, etc ( et al. ) while licensed and conducting business in the United States and the State of Indiana as a Internet Service Provider and  a Place of Public Accommodation covered under Title III of the Americans with Disabilities Act

**Questions Presented:**

1. When may a place of public accommodation discriminate against a disabled individual when it's prohibited under the law?

2. When may a place of public accommodation not licensed to practice medicine make determinations over someones disabilities i.e. vulnerable medical conditions when it's prohibited under the law and a form of discrimination?

3. When may a place of public accommodation retaliate, threaten , intimidate and coerce a disabled individual when it's already prohibited under the law?

4. When may  a place of public accommodation interfere with accessibility to services and the enjoyment of a disabled individuals rights in those services when it's already prohibited under the law?

5.  When may  a place of public accommodation show less favorable treatment, intentional discrimination and a deliberate indifference to the rights of a disabled person when it's already prohibited under the law?

6.  When may  a place of public accommodation subject a disabled person to mental/psychological abuse and cause actual impairments and harm to a disabled person when it's already prohibited under the law?

6. When may a place of public accommodation use an individuals disabilities to libelous/slanderous defamation and damage the reputation  of that person's character on the direct basis of a disability when it discrimination and is prohibited under the law?

5.  When may  a place of public accommodation impinge upon the rights to Liberty when it's already prohibited under the law?

### III. Verified Statement of Claim

The Disabled Plaintiff's for this action was denied an equal opportunity, effective communications, accommodations and the accessibility to services of a Place of Public accommodation covered under the Americans with Disabilities Act and has incurred actual discrimination ,psychological abuse, retaliation and an ongoing deliberate indifference from the intentional discrimination caused by numerous employees working in concert to interfere and deny access to services after being discriminated against after bringing up valid concerns of ongoing speed issues and modem (device) issues for Our services at Our home by the "only" service provider for Our residence that provides the services needed for Our home and devices . The accessibility to tech support services , device troubleshooting , work orders scheduled by a local office of the Defendant, s senior general manager of the local office, and where many tech support supervisors have acted in concert with this local office to deny and refuse services and then reporting all these issues back to the same party causing the issues and where nothing has been done to fixing Our internet services for Our home and where this ongoing deliberate indifference has continued since late March of 2022 and through present day and time

This Complaint is about service needed for other services of a places of public accommodation also supported under" Indiana laws for broadband access" i.e. internet services to ensure the Accessible Information and Communication Technology is technology that can be used by people with a wide range of disabilities (ICT)  and  Section 255 of the Telecommunications Act(Under the ADA, disabled persons benefit from equal access to all telecommunications services, including the internet, cell phones, and televisions. The act requires anyone who makes telecommunications equipment or who provides these services to ensure they are usable by and accessible to disabled persons.) , Access to Web-Based Buildings, W3C and  Web Content Accessibility Guidelines (WCAG) 2.1 ,  Section 508 & Title II (In June 2003, in recognition of how the internet was transforming interactions between the public and governmental entities, the DOJ published Accessibility of State and Local Government Websites to People with Disabilities),  The ADA Amendments Act of 2008 (went into effect on January 1, 2009.) ,  services of a place of public accommodation under Title III of the ADA , as well services needed for medical health care purposes , paying bills electronically, therapeutic purposes , leisure , educational purpose, video telehealth, life in general for a disabled individual needing the accessibility .

The Plaintiffs attest , The FCC requires certain communications services, television programs and equipment to be accessible to people with disabilities, including those who are blind or visually impaired; people who are deaf, hard of hearing or deaf-blind; and people with speaking, mobility, dexterity, cognitive or intellectual disabilities. Section 508 of the Rehabilitation Act (29 U.S.C. § 794d) and the Twenty-First Century Communications and Video Accessibility Act (47 U.S.C. § 613), are specifically directed at the issue of making technology accessible to people with disabilities. Sparklight has determined that they will and are intentionally going to deprive and infringe upon the Mapes' family's rights in conflict with the law and the business's conduct licensed to business in the United States while violating the rights and protections of  the Plaintiffs Mr & Mrs Mapes under the Americans with Disabilities Act and other federal and consumer law.

### IV. Statement of the Facts

1. On/or about 12, June 2022 We contacted Sparklight tech support about Our speed issues for our plan. We were told Our modem needed to be swapped out because it wasn't the right modem for the plan and scheduled a Tech to come out and swap it .

2. On/or about 13, June 2022 a Tech came out and did not swap our device and only checked the lines and device showing there were no issues with our lines and device/modem at our home causing the intermittency issues with our slow speeds and where employees used disabilities of Mr Mapes to treat him less favorable and that conduct continued even after the letter was sent and numerous employees were acting in concert to present Mr Mapes in a false light and that has resulted in others criticism and condemnation that continued to occur .

3. On/or about 14 June 2022 , We contacted support about the ongoing issues with our speeds(slow speeds) and unstable upload speeds as well unstable download and were told it was an issue coming from down the line and would be looked into and then helped us fix the billing issues with Sparklight who refused to fix them upon Our first request with the billing office in light of the issues we were having and where We did file a FTC complaint about the billing and speed issues on/or about 12 , June 2022 after being refused resolution and corrections with the 14 June 2022.

4. On/or about 16 , June 2022 the VP of Operations fpr the Defendant called the Plaintiffs in regards to the message left with the CEO about these issues with the slow speeds and assured the Plaintiffs the matter with the ongoing speed and Intermittency issues would be resolved and tech support would be working with us to resolve the issues as well the billing issues of Sparklight wanting to bill us for services not being provided for our plan and where after that assurance Mr Mapes was discriminated on and still being retaliated on and where Tech support is refusing to do their jobs by someone under this position not wanting us to have services as they have threatened in writing received On 5, July 2022 letter dated 1, July 2022.

5. On 5, July 2022 , We received a letter dated 1, July 2022 signed by Raymond Ness who has made it apparent that Sparklight has chosen to allow this aforementioned person to show discriminatory practices and made opinions about Mr Mapes' behavior and other false allegations about him .(See Indiana Const. Art 1 Sec 12 ; See also Disability Discrimination Laws ; Libelous/Slanderous Defamation)[ See Appendices A and B ] The letter shows Raymond Ness speaking and acting on behalf of Cable One d.b.a. Sparklight in it's entirety. In that letter Mr Ness is showing making opinions about things IMr Mapes ,sees a Dr for on a weekly basis and that , Mr Mapes , is disabled from ( See IC 25-22.5-8-1 Unlawful practice Sec. 1. Unlawful Practice. It is unlawful for any person to practice medicine or osteopathic medicine in this state without holding a license or permit to do so, as provided in this article. Formerly: Acts 1975, P.L.271, SEC.1. )and where Mr Ness is not licensed to practice behavioral health , mental health , speech disabilities, nor psychiatry or psychology , or for people living with mixed severe hearing loss since the age of 2 and where Defendant(s) is shown making such determinations of Mr Mapes vulnerable disability medical conditions to treat him less favorable. The letter also expresses that Sparklight has ignored the fact of the mental/psychological abuse and unwanted emotional distress they have caused to disabled consumers all because the consumer had the audacity to stand up for himself and assert and exercise their Federally protected rights while Sparklight continued to interfere with accessibility and enjoyment of that disable person's rights to services of a place of public accommodation.

6. On/or about 6, July 2022 We filed a FCC complaint against Sparklight and also served the company on that day via fax as well served the company other Notices. After filing the FCC complaint and where nothing has been done to fix the issues that began late March 2022 and where after receiving the letter We continue to have numerous tech support employees stating they don't have to provide services and for us to contact the local office and not ever provide us with any contact information or call backs will be scheduled and the local office doesn't call us back and where tech support refused us services

for our modem device that started having issues shortly after receiving the letter showing criticism and condemnation on the direct basis of a disability(s) .

7. On/or about, 13, July 2022 We were finally able to be provided tech support services for our modem issues and where the Tech Support Supervisor put in a work order scheduled for 15, July 2022 to come and swap out our modem after being refused those service by other tech support employees working in concert with the local office on the same day.

8. On/or about 15, July 2022 We had a scheduled technician to come out  between 9:30am-10:30am EST confirmed appointment (electronically automated message call validated at 9;52 a.m.)and at no time did that technician show up to swap out the device/modem  that was causing many issues with our services in more recent time and still  is after making that appointment. Sparklight confirms technician services coming out  for the scheduled appointment  and work order and where the local office has interfered with that service appointment  in light of the issues our  modem has been having and refusing to allow many issues to be fixed in tech support or with scheduled technician services. And in no time were We contacted  to let us know they were refusing to come out and where they did not show up for the scheduled appointment to swap the other modem as insured by a tech support supervisor.

9.  On/or about 14, July 2022 We contacted the billing department to inquire why no corrections were made for not receiving the services on our plan and in light of the aforementioned concomitant facts shown in 1.- 8. billing issues as was done  14 June 2022 and where billing stated they wanted to wait until after the Technician came out on the 15, July 2020 and stated the local office had involvement.

10.  On/or about 15, July 2022 around/or about 11a.m. When We called Sparklight to make an inquiry to see if the Technician was late We were told the local office canceled and refused the work order and interfered with the service and made it seem as though a local office may interfere with the services of a place of public accommodation and to allow a technician to assist us fixing ongoing issues Our modem started having.

11. On/or about 15, July 2022 We contacted billing to see if those issues would be corrected and where again that billing in full for services not received including ongoing speed , modem issues, tech support and tech support work orders for our modem and because of the local office's ongoing interferences.

12. We attest,  Sparklight Tech Support  is there to better handle the modem issues we have been having being Our internet service provider . When We call and have continued to inform them about TLV-11 – unrecognized OID message, Config Error Lost MDD Timeout Multiple t4 timeouts followed by t3 timeouts . Sparklight tech support has refused assistance and to make changes to the modem to resolve the ongoing issues with the configuration files and other critical errors Our modem has been having for two weeks and where Tech support is saying the local office is the reason they don't have to provide tech support and troubleshooting for these ongoing modem issues We're now having and where the Intermittency we have been having since late March with speeds has not been resolved also by this local office who has interfered with services to fix the issues . The local office Senior General Manager a party involved for similar conduct and where is now harassing us and refusing to let other people do their jobs and allow some of them to act in concert interfering with accessibility to valid and needed services. The Modem device issues  is one problem  that could be the modem has a faulty chipset per or doesn't recognize IP or MAC of modem all the t3 Time-outs , t4 Time-outs, sync errors , Config Errors though We can't be certain since we are being denied the services needed to troubleshoot these issues Our modem is having and understand these device issues could be caused by a faulty line validated ,or damaged cables down the line from our residenceaffirmed by Sparklight Tech Support around or about 14, June 2022 before we were having issues with our modem ,  maybe because the noise power level is higher than our modem's signal, or  wrong device configuration  We can't be certain because we are being refused Tech support who is acting on behalf of the local office these issues with Our services have been ongoing and now We are having issues Our modem.

- 6 -

## V. Legal Issues Involved:
### A .CABLE ONE D.B.A. SPARKLIGHT HAS SHOWN INTENTIONAL DISCRIMINATION AND A DELIBERATE INDIFFERENCE

1. In light of these concomitant facts , establishing intentional discrimination "does not require a showing of personal ill will or animosity toward the disabled person." Meagley v. City of Little Rock, 639 F.3d 384, 389 (8th Cir. 2011); accord Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 275 (2d Cir. 2009); Barber v. Colorado Dep't of Revenue, 562 F.3d 1222, 1228 (10th Cir. 2009). Rather, intentional discrimination may be "inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will result in a violation of federally protected rights." Powers v. MJB Acquisition Corp., 184 F.3d 1147, 1153 (10 th Cir. 1999); accord Loeffler, 582 F.3d at 275; Mark H. v. Lemahieu, 513 F.3d 922, 938 (9th Cir. 2008). Accordingly, a plaintiff seeking to prove intentional discrimination "must present evidence that shows both: (1) knowledge that a federally protected right is substantially likely to be violated and (2) failure to act despite that knowledge." S.H., 729 F.3d at 265 (citing Duvall v. County of Kitsap, 260 F.3d 1124, 1139 (9th Cir. 2001)). The purpose of the intentional discrimination requirement is thus "not to measure the degree of institutional ill will toward a protected group, or to weigh competing institutional motives," but to ensure that the entity had notice that its actions might violate statutory prohibitions as a prerequisite to financial liability. Lovell v. Chandler, 303 F.3d 1039, 1057 (9th Cir. 2002), cert. denied, 537 U.S. 1105 (2003). To prove a violation of Title II , Title III , Sec 504, FHA (they all have the same language ) , a plaintiff/appellant must show that he (1) has a disability; (2) is otherwise qualified to participate in a public entity's service, program, or activity; and (3) was denied the opportunity to do so, or was otherwise discriminated against, based on his disability. 42 U.S.C. 12132

2. The Community Relations Department of the US Department of Justice (2001:1) defines a hate crime as: "the violence of intolerance and bigotry, intended to hurt and intimidate someone because of their disability. It also includes acts of retaliation against persons who have asserted their rights, regardless whether their original complaint was successful.(See 28 C.F.R. 36.206 ; See also 42 U.S.C. 12203 ) Under Indiana Code 35-42-2-2 defines criminal recklessness as: (a)A person who recklessly, knowingly, or intentionally performs an act that creates a substantial risk of bodily injury to another person commits criminal recklessness. Most crimes have an "intent" element as part of the crime. In other words, someone intended to do something. However, Indiana courts have held that "Recklessness" is shown by a disregard for the harm that might result. So, the crime of recklessness does not require an intent to accomplish a result which would constitute a crime. Instead, where a person is charged with criminal recklessness, he is not required to intend the harm which resulted from his actions; it is sufficient to show that he realized or should have realized that there was a strong probability that such harm might result. Section 35-45-2-1 (Intimidation) Intimidation occurs when an individual communicates a threat with the intent to: Put another person in fear of retaliation for a prior lawful act;(See 28 C.F.R. 35.134 and 42 U.S.C. 12203) IC 35-42-2-1.5 Aggravated battery Sec. 1.5. A person who knowingly or intentionally inflicts injury on a person that creates a substantial risk of death or causes: (2) protracted loss or impairment of the function of a bodily member or organ;(Direct basis and disability related )[Mr and Mrs MAPES both have medical disability records and facts supporting the battery caused by the landlords intimidation and threats.] Found in Burns Ind. Code Ann. § 35-45-10-2. "Harassment" defined. (1993) As used in this chapter, "harassment" means conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress. {Disability Fact ] distress and  stress are forms of mental abuse and a crime under the law to subject a disabled person to. This conduct is already prohibited and considered unlawful .

3. Although liability under Title II and Sec. 504(Title III has the same language and laws) is not premised on an intent to discriminate, Washington v. Indiana High Sch. Athletic Ass'n, 181 F.3d 840, 846 (7th Cir.), cert. denied, 528U.S. 1046 (1999); Wisconsin Cmty. Servs., Inc. v. City of Milwaukee, 465 F.3d 737, 753 (7th Cir. 2006) (en banc), all circuits to consider the issue have held that "compensatory damages are only available for intentional discrimination," CTL v. Ashland Sch. Dist., 743 F.3d 524, 528 n.4 (7th Cir. 2014); see also Love v. Westville Corr. Ctr., 103 F.3d 558, 560-561 (7th Cir. 1996) (suggesting that compensatory damages under the ADA require intentional discrimination). Not all circuits have settled on the appropriate standard for establishing intentional discrimination, see CTL, 743 F.3d at 528 n.4; S.H. v. Lower Merion Sch. Dist., 729 F.3d 248, 262-263 (3d Cir. 2013), but the majority have applied a "deliberate indifference" standard rather than requiring "discriminatory animus." Five circuits have adopted the deliberate indifference standard, (See, e.g., S.H., 729 F.3d at 263; Liese v. Indian River Cnty. Hosp. Dist., 701 F.3d 334, 348 (11th Cir. 2012); Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 275 (2d Cir. 2009); Barber v. Colorado Dep't of Revenue, 562 F.3d 1222, 1228-1229 (10th Cir. 2009); Mark H. v. Lemahieu, 513 F.3d 922, 938 (9th Cir. 2008). and a sixth has applied it without rejecting others. (See Meagley v. City of Little Rock, 639 F.3d 384, 389 (8th Cir. 2011). Rather, intentional discrimination may be "inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will result in a violation of federally protected rights." Powers v. MJB Acquisition Corp., 184 F.3d 1147, 1153 (10 th Cir. 1999); accord Loeffler, 582 F.3d at 275; Mark H. v. Lemahieu, 513 F.3d 922, 938 (9th Cir. 2008).

4.  Accordingly, Plaintiffs Mr and Mrs MAPES seeking to prove intentional discrimination "CAN" present evidence that shows both: (1) knowledge that a federally protected right is substantially likely to be violated and (2) the Defendants failure to act despite that knowledge." S.H., 729 F.3d at 265 (citing Duvall v. County of Kitsap, 260 F.3d 1124, 1139 (9th Cir. 2001)). The purpose of the intentional discrimination requirement is thus "not to measure the degree of institutional ill will toward a protected group, or to weigh competing institutional motives," but to ensure that the Defendants had notice that its actions might violate statutory prohibitions as a prerequisite to financial liability shown in several complaints and notices sent to the Defendants. Lovell v. Chandler, 303 F.3d 1039, 1057 (9th Cir. 2002), cert. denied, 537 U.S. 1105 (2003). **To prove a violation of Title II , Title III , Sec 504, FHA (they all have the same language , rights , protections and enforcement)** , the disabled Plaintiffs Mr and Mrs MAPES CAN show that s/he (1) has a disability; (2) is otherwise qualified to participate in a public entity's service, program, or activity; and (3) was denied the opportunity to do so, or was otherwise discriminated against, based on his disability by Sparklight. 42 U.S.C. 12132; see generally Washington v. Indiana High Sch. Athletic Ass'n, 181 F.3d 840, 843 (7th Cir.), cert. denied, 528 U.S. 1046 (1999). Only portions of the second and third elements are at issue here. Although the ADA does not define that phrase, Section 504, which is coextensive with Title II as relevant here, see Washington, 181 F.3d at 846-847, defines "program or activity" as encompassing "all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government," 29 U.S.C. 794(b) (1)(A). See Frame v. City of Arlington, 657 F.3d 215, 225 (5th Cir. 2011) (en banc), cert. Denied, 565 n U.S. 1200 (2012). Moreover, courts have recognized that "programs, services, or activities" is a "catch-all phrase that prohibits all discrimination by a public entity, regardless of the context." Innovative Health Sys., Inc. v. City of White Plains, 117 F.3d 37, 45 (2d Cir. 1997); accord Barden v. City of Sacramento, 292 F.3d 1073, 1076 (9 th Cir. 2002), cert. Denied, 539 U.S. 958 (2003). Program is a service, program, or activity within the meaning of Title III that applies to Sparklight and all it's employees from the CEO down.

    5. Fundamental liberty interests, however, are limited to those that are "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if [they] were sacrificed," or that are "deeply rooted in this Nation's history and tradition."(Bowers v. Hardwick, 478 U.S. 186, 191-92

- 8 -

(1986) (overruled by Lawrence v. Texas, 539 U.S. 558 (2003), and quoting Palko v. Connecticut, 302 U.S. 319, 325 (1937) and Moore v. City of East Cleveland, 431 U.S. 494, 503 (1977)). See District Attorney's Office v. Osborne, 557 U.S. 52, 129 S. Ct. 2308, 2319 (2009) (liberty interest in demonstrating innocence with new evidence)This is because the recipient or applicant "may be deprive[d] of the very means by which to live...."( Goldberg v. Kelly, 397 U.S. 254, 264 (1970) (Aid to Families with Dependent Children benefits); Wheeler v. Montgomery, 397 U.S. 280 (1970) (benefits under Aid to the Totally Disabled Program, the California precursor to the Supplemental Security Income program)

**6.** Liberty under the 14th Amendment of the U.S. Const.  is Freedom; exemption from extraneous control. The power of the will, in its moral freedom, to follow the dictates of its unrestricted choice, and to direct the external acts of the individual without restraint, coercion, or control from other persons. See Booth v. Illinois, 1S4 U. S. 425, 22 Sup. Ct. 425, 46 L. Ed. 623 ; Munn v. Illinois, 94 U. S. 142. 24 L. Ed. 77; People v. Warden of City Prison. 157 N. Y. 116, 51 N. E. 1006. 43 L. R. A. 264, 68 Am. St. Rep. 7I ) Liberty the right to be free in all faculties in all lawful ways.

**B. The federal rule under Title III of the ADA for people like Mr Mapes with hearing and speech disabilities 28 C.F.R. 36.303 Auxiliary aids and services.**
(a) General. A public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the public accommodation can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden, i.e., significant difficulty or expense.
(b) Examples. The term "auxiliary aids and services" includes –
(1) Qualified interpreters on-site or through video remote interpreting (VRI) services; notetakers; real-time computer-aided transcription services; written materials; exchange of written notes; telephone handset amplifiers; assistive listening devices; assistive listening systems; telephones compatible with hearing aids; closed caption decoders; open and closed captioning(Eg. Wireless Smart Tv's), including real-time captioning; voice, text, and video-based telecommunications products and systems(E.g. Wireless computers/laptops and Wireless Devices, Mobile Phones) , including text telephones (TTYs), videophones, and captioned telephones, or equally effective telecommunications device(Eg. Wireless computers/laptops and Wireless Devices); videotext displays; accessible electronic and information technology; or other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing;
Title 28 - Judicial Administration
Chapter I - DEPARTMENT OF JUSTICE
Part 36 - NONDISCRIMINATION ON THE BASIS OF DISABILITY BY PUBLIC ACCOMMODATIONS AND IN COMMERCIAL FACILITIES
Subpart C - Specific Requirements    Section 36.303 - Auxiliary aids and services.
Order No. 1513-91, 56 FR 35592, July 26, 1991, as amended by AG Order No. 3181-2010, 75 FR 56253, Sept. 15, 2010  56 FR 35592, 75 FR 56253
         Telecommunication (telecom):
 involves the exchange of information, such as voice, video and **data**, using electronic devices. It's a wide term that encompasses many technologies like wireless  i.e. wireless internet and wired phones, fiber optics i.e. internet, radio i.e. wireless internet , TV, the internet and other means of transmitted communication i.e. wireless internet.

**C. Prohibition on State or Local Tax on Internet Access 6-10-1-2. "Internet access" Universal Citation: IN Code § 6-10-1-2 (2018) IC 6-10-1-2**

"Internet access" Sec. 2. (a) As used in this chapter, "Internet access" means a service that enables users to connect to the Internet to access content, information, or other services offered over the Internet, without regard to whether the service is referred to as telecommunications, communications, transmission, or similar services, and without regard to whether a provider of the service is subject to regulation by the Federal Communications Commission as a common carrier under 47 U.S.C. 201 et seq. (b) The term also includes the following: (1) The purchase, use, or sale of communications services, including telecommunications services (as defined in IC 6-2.5-1-27.5), by a provider of a service described in subsection (a), to the extent the communications services are purchased, used, or sold to provide the service described in subsection (a) or to otherwise enable users to access content, information, or other services offered over the Internet. (2) Services that are incidental to the provision of a service described in subsection (a), when furnished to users as part of such service, including a home page, electronic mail and instant messaging (including voice-capable and video-capable electronic mail and instant messaging), video clips, and personal electronic storage capacity. (3) A home page, electronic mail and instant messaging (including voice-capable and video-capable electronic mail and instant messaging), video clips, and personal electronic storage capacity that are provided independently or that are not packaged with Internet access. (c) The term does not include: (1) voice, audio, or video programming; or (2) other products and services, except services described in subsection (a) or (b), that use Internet protocol or any successor protocol and for which there is a charge, regardless of whether the charge is separately stated or aggregated with the charge for services described in subsection (a) or (b). As added by P.L.44-2015, SEC.1. Amended by P.L.149-2016, SEC.32.

**D. ADA Rule**

.The ADA rule defines "mental impairment" to include "[a]ny mental or psychological disorder, such as . . . emotional or mental illness."(29 C.F.R. § 1630.2(h)(2) (1996). In light of the actual fact of emotional and.or mental illness if a concomitant fact of the housing complaint and where emotional and mental harm is abuse , a crime and where the Defendant has made determinations that pertain to how someone disabled is affected in their housing in all aspects A and under the ADA abuse is prohibited under the law and an unlawful act.

Examples of "emotional or mental illness[es]" include major depression, bipolar disorder, anxiety disorders (which include panic disorder, obsessive compulsive disorder, and post-traumatic stress disorder), schizophrenia, and personality disorders. The current edition of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (now the fourth edition, DSM-IV) is relevant for identifying these disorders. The DSM-IV has been recognized as an important reference by courts and is widely used by American mental health professionals for diagnostic and insurance reimbursement purposes. To rise to the level of a "disability," an impairment must "substantially limit" one or more major life activities of the individual.

An impairment must substantially limit one or more major life activities to rise to the level of a "disability" under the ADA.(See 42 U.S.C. § 12102(2)(A) (1994); 29 C.F.R. § 1630.2(g)(1) (1996) ; 42 U.S.C. § 12102(2) (1994))An impairment is sufficiently severe to substantially limit a major life activity if it prevents an individual from performing a major life activity or significantly restricts the condition, manner, or duration under which an individual can perform a major life activity, as compared to the average person in the general population.( See 29  C.F.R. § 1630.2(j) (1996)) An impairment is substantially limiting if it lasts for more than

several months and significantly restricts the performance of one or more major life activities during that time.

The ADA defines a "disability" as any physical( hearing and speech and other physcical disabilties) or mental impairment that substantially limits a major life activity. 42 U.S.C. § 12102(1). Mental impairments include psychological disorders, intellectual disabilities, organic brain syndrome, emotional or mental illness, and certain learning disorders. 29 C.F.R. § 1630.2(h)(2). Covered mental disabilities almost always include major depressive disorder, bipolar disorder, post-traumatic stress disorder, obsessive compulsive disorder, and schizophrenia. 29 C.F.R. § 1630.2(j)(3)(iii). Even a mental "impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D). Major life activities include such things as the ability to concentrate, communicate, interact with others, eat, sleep, care for yourself, or regulate your thoughts or emotions. 42 U.S.C. § 12102(2).

**E. Pursuant to Title III of the ADA and its implementing regulation, CABLE ONE d.b.a. SPARKLIGHT, any of their affiliates, associates, third parties , heirs , administrators, executors successors, etc ( et al. ) is a place of public accommodation:**

a. Shall not discriminate on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201; 28 C.F.R. 36.206(b);

b. Shall not deny individuals with disabilities the opportunity to participate in and benefit from the goods, services, facilities, privileges, advantages, and accommodations provided by CABLE ONE D.B.A. SPARKLIGHT , any of their affiliates, associates, third parties , heirs , administrators, executors successors, etc ( et al. ) and all it's services. 42 U.S.C. § 12182(b)(l)(A)(i); 28 C.F.R. § 36.202(a);

c. Shall not provide individuals with disabilities an unequal opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, and accommodations provided by CABLE ONE D.B.A. SPARKLIGHT , any of their affiliates, associates, third parties , heirs , administrators, executors successors, etc ( et al. ) and all it's services. 42 U.S.C. § 12182(b)(l)(A)(ii); 28 C.F.R. § 36.202(b);

d. Shall take the necessary steps to ensure that individuals with disabilities are not excluded, denied services, segregated, or otherwise treated differently because of the absence of auxiliary aids and services, unless CABLE ONE D.B.A. SPARKLIGHT, any of their affiliates, associates, third parties ,\ heirs , administrators, executors successors, etc ( et al. ) can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden.(providing services is not a burden) 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303;

e. Shall not utilize standards or criteria or methods of administration that have the effect of discriminating on the basis of disability, or perpetuate the discrimination of others who are subject to common administrative control. 42 U.S.C. § 12182(b)(l)(D); 28 C.F.R. § 36.204.

Congress passed the Americans with Disabilities Act ("ADA") in 1990 based on findings that society isolates and segregates people with disabilities and that discrimination against individuals with disabilities is a serious and pervasive social problem.( The Americans with Disabilities Act, 42 U.S.C. § 12101(a)(8) (1990). ) Title III prohibits private entities that own, operate, or lease places of public accommodation from discriminating against people with disabilities. It states that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." ( 42 U.S.C. § 12182(a) ) In addition to its general non-discrimination requirements, Title III restricts covered entities from: (Id. § 12182(b)(2) )

**F. CABLE ONE d.b.a. SPARKLIGHT, any of their affiliates, associates, third parties , heirs , administrators, executors successors, etc ( et al. ) has discriminated on the Plaintiff's and interfered with the enjoyment of rights and accessibility to services of a place of public accommodation after valid oppositions and complaints were made 28 C.F.R .§ 36.306 :**
(a) No private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act or this part.
(b) No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part.
(c) Illustrations of conduct prohibited by this section include, but are not limited to:
(1) Coercing an individual to deny or limit the benefits, services, or advantages to which he or she is entitled under the Act or this part;
(2) Threatening, intimidating, or interfering with an individual with a disability who is seeking to obtain or use the goods, services, facilities, privileges, advantages, or accommodations of a public accommodation;
(3) Intimidating or threatening any person because that person is assisting or encouraging an individual or group entitled to claim the rights granted or protected by the Act or this part to exercise those rights; or
(4) Retaliating against any person because that person has participated in any investigation or action to enforce the Act or this part.
   Act means the Americans with Disabilities Act of 1990 (Pub. L. 101-336, 104 Stat. 327, 42 U.S.C. 12101-12213 and 47 U.S.C. 225 and 611).(Source 28 CFR § 36.104)

**42 U.S.C. § 12203. Prohibition against retaliation and coercion**
(a) Retaliation
No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
(b) Interference, coercion, or intimidation
It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

(c) Remedies and procedures
The remedies and procedures available under sections 12117, 12133, and 12188 of this title shall be available to aggrieved persons for violations of subsections (a) and (b), with respect to sub-chapter I, subchapter II and subchapter III, respectively.
(Pub. L. 101–336, title V, § 503, July 26, 1990, 104 Stat. 370.)
REFERENCES IN TEXT
This chapter, referred to in subsecs. (a) and (b), was in the original "this Act", meaning Pub. L. 101–336, July 26, 1990, 104 Stat. 327, which is classified principally to this chapter. For complete classification of this Act to the Code, see Short Title note set out under section 12101 of this title and Tables.


**G. 28 C.F.R. § 36.504 Relief.**
(a) Authority of court. In a civil action under Sec.36.503, the court --
(1) May grant any equitable relief that such court considers to be appropriate, including, to the extent required by the Act or this part --
(i) Granting temporary, preliminary, or permanent relief;
(ii) Providing an auxiliary aid or service, modification of policy, practice, or procedure, or alternative method; and
(iii) Making facilities readily accessible to and usable by individuals with disabilities;
(2) May award other relief as the court considers to be appropriate, including monetary damages to persons aggrieved when requested by the Attorney General; and
(3) May, to vindicate the public interest, assess a civil penalty against the entity in an amount
(i) Not exceeding $50,000 for a first violation occurring before September 29, 1999, and not exceeding $55,000 for a first violation occurring on or after September 29, 1999; and
(ii) Not exceeding $100,000 for any subsequent violation occurring before September 29, 1999, and not exceeding $110,000 for any subsequent violation occurring on or after September 29, 1999.
(b) Single violation. For purposes of paragraph (a) (3) of this section, in determining whether a first or subsequent violation has occurred, a determination in a single action, by judgment or settlement, that the covered entity has engaged in more than one discriminatory act shall be counted as a single violation.
(c) Punitive damages. For purposes of paragraph (a)(2) of this section, the terms "monetary damages" and "such other relief" do not include punitive damages.
(d) Judicial consideration. In a civil action under Sec.36.503, the court, when considering what amount of civil penalty, if any, is appropriate, shall give consideration to any good faith effort or attempt to comply with this part by the entity. In evaluating good faith, the court shall consider, among other factors it deems relevant, whether the entity could have reasonably anticipated the need for an appropriate type of auxiliary aid needed to accommodate the unique needs of a particular individual with a disability.


   On March 28, 2014, the Department of Justice issued a Final Rule that adjusts for inflation the civil monetary penalties assessed or enforced by the Civil Rights Division, including civil penalties available under title III of the Americans with Disabilities Act of 1990 (ADA). For the ADA, this adjustment increases the maximum civil penalty for a first violation under title III from $55,000 to $75,000; for any other subsequent violations the new maximum is $150,000 for each . The new maximums apply only to violations occurring on or after April 28, 2014.

- 13 -

**H.** CABLE ONE D.B.A. SPARKLIGHT , et al has shown a wanton and willful disregard to the rights of the Disabled plaintiffs and where employees of Sparklight called these rights and their unlawful conduct merely a feeling and where CABLE ONE D.B.A. SPARKLIGHT , et al has shown unathorized practice of medicine in it's conduct while conducting business in the United States and State of Indiana . ( See App Volume 1 A pg 3: employee making determinations of someone elese's disabilities i.e. medical conditions See IC 25-22.5-8-1 Unlawful practice Sec. 1. Unlawful Practice. It is unlawful for any person to practice medicine or osteopathic medicine in this state without holding a license or permit to do so, as provided in this article. Formerly: Acts 1975, P.L.271, SEC.1. )

**I.** CABLE ONE D.B.A. SPARKLIGHT , et al has shown libelous and slanderous defamation , ad hominem and odiums to the Plaintiffs both verbally and in writing by using the disabilities of the Plaintiff to discriminate against him and potray him in a falser lite and cause both plaintiffs to suffer emotional distress and ongoing segregative ( See Iand less favorable treatmentN Const. Art 1 Sec 12:All courts shall be open; and every man, for injury done to him in his reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay. ; See also **28 U.S. Code § 4101** :libel, slander, or similar claim alleging that forms of speech are false, have caused damage to reputation or emotional distress(mental/psychological abuse a crime and federal hate crime), have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any person. )

    In furtherance , " No man [or woman] in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the government from the highest to the lowest, are creatures of the law, and are bound to obey it." No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the government from the highest to the lowest, are creatures of the law, and are bound to obey it. United States v. Lee, 106 U.S. 196, 220, 1 S.Ct. 240, 27 L.ed. 171 (1882) Buckles v. King County 191 F.3d 1127, *1133 (C.A.9 (Wash.),1999) Butz v. Economou, 98 S. Ct. 2894(1978); United States v. Lee, 106 U.S. at 220, 1 S. Ct. at 261 (1882).

    That being said, No business/corporation like the Defendant(s) CABLE ONE D.B.A. SPARKLIGHT , et al conducting business in the United States and State of Indiana may violate U.S. and Federal laws in their conduct nor are they above the law or allowed to make determinations about the rights of a disabled person already bound by U.S. , Federal , and State laws and Title III of the Americans with Disabilities Act Places of Public Accommodation codified in U.S. and Federal laws and CABLE ONE D.B.A. SPARKLIGHT , et al showing conduct that does not comport to the law and honoring the the rights of disabled consumers for roughly 2 months and still ongoing to this present day and time.

    **WHEREFORE,** Both the Disabled Plaintiffs have a record of actual disabilities", and where they are qualified individuals with disabilities under the law and where the Defendant has not fairly considered how failing to remedy those issues that continue to cause an adverse affect on both Mr & Mrs Mapes mental health . The lack of consideration of that medical aspect has deprived personal autonomy and dignity and not afforded a full inclusion to Mr & Mrs Mapes nor provided an equal opportunity and where under Federal Disability Hate crime laws mental abuse is a crime  The intent to harm emotionally constitutes the basis for IIED. Creel, 771 N.E.2d at 1282; Ledbetter, 725 N.E.2d at 124. ; Creel v. I.C.E. Assoc. Inc., 771 N.E.2d 1276, 1282 (Ind. Ct. App. 2002). ; § 1986 (civil action for neglect to prevent wrongs in 42 U.S.C. § 1985)

    **Finally,** The Disabled Plaintiffs have shown they are entitled to the full protections, enforcement and relief allowed under the law and under their rights under the Americans with Disabilities Act.

- 14 -

## VI. Relief

**1.** The Disabled Plaintiffs now requests this Honorable Court accept , file and open the Complaint against the Defendants  CABLE ONE D.B.A. SPARKLIGHT , any of their affiliates, associates, third parties , heirs , administrators, executors successors, etc ( et al. ) individually, jointly and severally

**2.** The Disabled Plaintiffs prays and respectfully requests this Honorable Court grant and order and award the Plaintiffs  individually and jointly the monetary, punitive and injuctive relief and whatever this Honorable Court deems appropriate , equitable and just  in favor of the Disabled Plaintiffs against against CABLE ONE D.B.A. SPARKLIGHT , any of their affiliates, associates, third parties , heirs , administrators, executors successors, etc ( et al. ) individually, jointly and severally

3. The Disabled Plaintiffs prays and respectfully requests this Honorable Court grant , order and award other relief  individually and jointly as the court considers to be appropriate, including monetary damages in favor of  to the aggrieved Disabled Plaintiffs against CABLE ONE D.B.A. SPARKLIGHT , any of their affiliates, associates, third parties , heirs , administrators, executors successors, etc ( et al. ) individually, jointly and severally

4.  The Disabled Plaintiffs prays and respectfully requests this Honorable Court grant , order and award judgment against CABLE ONE D.B.A. SPARKLIGHT , any of their affiliates, associates, third parties , heirs , administrators, executors successors, etc ( et al. ) individually, jointly and severally in favor of the Disabled Plaintiffs in amounts  TBD in excess Seventy-five Thousand Dollars ( $75,000) individually and jointly for the Plaintiffs by this Court pursuant to  28 C.F.R. § 36.504(3)(i) , (ii) shown on page 13 of this Complaint allows and affords the Plaintiffs to be awarded in an amount in excess of Seventy-five Thousand Dollars ( $75,000) both individually and jointly for the first violation and awarded in  amounts in excess of One Hundred and Ten Thousand Dollars ( $110,000) for each subsequent violation (i.e. ongoing prohibited conduct ) both individually and jointly pursuant to **28** C.F.R. § 36.504(a)(1) and  28 C.F.R. § 36.504(a)(3)(i),(ii) the federally protected rights of the Plaintiffs.

## VII. Certification and Closing

I , MrEric-Joshua: Mapes. , Sui juris and Mrs Jenelle-Mackenzie: Kelly-Mapes. , Sui juris . certify to the best of Our knowledge, information, and belief that this complaint:
(1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
(2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law;
(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
(4) the complaint otherwise complies with the requirements under 42 U.S.C. 1983

   A. I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

   B. Plaintiff requests the Court to Serve the Defendant this Complaint.

  We hereby declare under penalty of perjury that the above information is complete, correct, and true to the best of Our knowledge.

Autographed this 18 , July  2022

"All Rights Reserved:" "(UCC 1-207; UCC 1-103)"

By Authorized Representatives: Eric-Joshua: Mapes , Sui juris

Jenelle-Mackenzie: Kelly-Mapes , Sui juris

- 15 -

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of this and "all documents" pertaining to the above 15 page "VERIFIED CIVIL COMPLAINT" ( 22 pages Total with Appendices) was served on the date listed below via Certified U.S. Mail to:

1.United States District Court
  Northern District of Indiana
  5400 Federal Plaza Suite 2300
  Hammond, IN 46320

2.  CABLE ONE d.b.a. SPARKLIGHT, et al
    1314 N 3rd St # 3
    Phoenix, AZ 85004-1749

I hereby declare under penalty of perjury that the above information is complete, correct, and true to the best of my knowledge.

Autographed this 18, July 2022

"All Rights Reserved:" "(UCC 1-207; UCC 1-103)"

By Authorized Representatives: _Eric Joshua Mapes_ , Sui juris

**To the Honorable Court**
**Certified Mail/Confirmation of Delivery/Validation Notice #** 7019 2280 0002 2843 4793

**CABLE ONE D.B.A. SPARKLIGHT, et al**
**Certified Mail/Confirmation of Delivery/Validation Notice #** 7020 3160 0001 0743 0385

- 16 -

# UNITED STATES DISTRICT COURT
## for the
## Northern District of Indiana

Eric-Joshua: Mapes., Sui juris                )
Jenelle-Mackenzie: Kelly-Mapes. , Sui Juris  )
      Plaintiff(s)                       )
                                         )
                                         )  Civil Action No. _____
      v                                  )
                                         )
                                         )
CABLE ONE d.b.a. SPARKLIGHT, et al.          )
      Defendant(s)                       )
                                         )
                                         )
                                         )

**Certified Mail/Confirmation of Delivery/Validation Notice #** 7019 2280 0002 2893 4793
**Autographed in the presence of:** #7020 3160 0001 0743 0385

## AFFIDAVIT/JURAT

This Affidavit/Jurat pertains to the foregoing **"VERIFIED CIVIL COMPLAINT"**

I _Cassandra Pettiner_, a Notary Public do verify by my autograph below, that the man Mr Eric-Joshua: Mapes. and woman Mrs Jenelle-Mackenzie: Kelly-Mapes. , been known to and/or showing identification card with picture, being picture I.D. That Mr Eric-Joshua: Mapes. and Mrs Jenelle-Mackenzie: Kelly-Mapes. . who now appears before me and autographed his name on the preceding page in my presence and view, and did clearly state the following out loud in living voice before me; "all statements in my foregoing pages are my truth, without intent to mislead, and given on my unlimited liability, as my sworn testimony regarding the **"VERIFIED CIVIL COMPLAINT"**.

Notary signature: _Cassandra Pettiner_

Notary printed name: _Cassandra Pettiner_

```
CASSANDRA PETTINER
Notary Public - Seal
Carroll County - State of Indiana
Commission Number NP0740013
My Commission Expires Mar 22, 2030
```

My commission expires _March 22, 2030_

Autographed this 18, July 2022

"All Rights Reserved:" "(UCC 1-207; UCC 1-103)"

By Authorized Representatives: _Eric-Joshua: Mapes_, Sui juris

_Jenelle-Mackenzie: Kelly-mapes_, Sui juris

- 17 -

# UNITED STATES DISTRICT COURT
### for the
### Northern District of Indiana

| | |
|---|---|
| Eric-Joshua: Mapes., Sui juris            ) <br> Jenelle-Mackenzie: Kelly-Mapes. , Sui Juris   ) <br>        Plaintiff(s)               ) <br>                        ) <br>                        ) <br>          v                 ) <br>                        ) <br>                        ) <br> CABLE ONE d.b.a. SPARKLIGHT, et al.   ) <br>        Defendant(s)            ) <br>                        ) <br>                        ) <br>                        ) | Civil Action No. _____ |

---

### Plaintiff's Appendix

### Volume 1 of 1

### Pages 4

---

Mr Eric-Joshua: Mapes, Sui juris
Mrs Jenelle-Mackenzie: Kelly-Mapes, Sui juris
219 N Union St.
Delphi, IN 46923
(765) 400-9732
mr.e.mapes@gmail.com

- 1 -

# UNITED STATES DISTRICT COURT
## for the
## Northern District of Indiana

Eric-Joshua: Mapes., Sui juris                )
Jenelle-Mackenzie: Kelly-Mapes. , Sui Juris    )
      Plaintiff(s)    )
       )
       )    Civil Action No. _____
      v    )
       )
       )
CABLE ONE d.b.a. SPARKLIGHT, et al.    )
      Defendant(s)    )
       )
       )
       )

---

### Plaintiff's Appendix

### TABLE OF APPENDICES

**VOLUME 1**
  TABLE OF APPENDICES             PAGE 2
    Appendix A  - Letter From Defendant(s)     PAGE 3
    Appendix B -  Letter From Plaintiffs Docotr   PAGE 4

### All Volumes  4 Pages

---

We hereby declare under penalty of perjury that the above information is complete, correct, and true to the best of Our knowledge.

Autographed this 18, July 2022

"All Rights Reserved:" "(UCC 1-207; UCC 1-103)"

By Authorized Representatives: Eric-Joshua: Mapes. , Sui juris

Jenelle-mackenzie: Kelly-mapes , Sui juris

**Certified Mail/Confirmation of Delivery/Validation Notice #** 7019 2280 0002 2893 4793
# 7020 3160 0001 0743 0385

**APPENDIX A**

# /Sparklight®

Mr. Eric Mapes
219 N. Union St.
Delphi, IN 46923
Date: 7/01/2022 RN

Dear Mr. Mapes,

We have made every effort to respond to your concerns about your service, including verifying your download speeds at your physical location. Throughout this process, you have been verbally abusive to our customer service representatives, including making threats of physical harm. We take the work conditions and safety of our associates very seriously – under no circumstances are abuse and threats acceptable.

Due to your actions and our inability to satisfy your expectations, we have made the decision to terminate your internet service as of August 12, 2022. We are providing advanced notice to give you an opportunity to change providers; however, if your abusive behavior persists, we will immediately terminate your service.

Sincerely,

Raymond Ness

Raymond Ness
Senior General Manager

- 3 -

# APPENDIX B

**Mark R. Roth, Ph.D. HSPP**
**Clinical Psychologist**

**333 N. Alabama St. Ste. 350 Indianapolis, IN 46204**
**Mailing:  4000 W. 106th St.  Ste. 125-125 Carmel, IN 46032**
**Phone:  (317) 459-6755**
**FAX (317) 296-7207 mroth5076@yahoo.com**

**Date:** 07/13/22

To Whom It May Concern:

I have been providing psychological services to Eric and Jenelle Mapes.  Recently Eric reported that he might likely have his internet services terminated.  Both of these clients suffer from major psychological disorders and rely heavily on the internet for communication with the outside world and for meeting the daily needs of their household including parenting.  Termination of internet services would produce major stress and likely trigger symptoms of anxiety/depression and harm their mental health.

In addition, Eric explained that termination of internet services was based on reported patient threats to the provider's employees.  It is my opinion that Eric's intentions were misconstrued.  He suffers from both speech and communication disorders which might cause him to appear aggressive when he is just frustrated and repeatedly attempts to explain himself.  He may also respond idiosyncratically to the cues of others.  It is my opinion that Eric has no intention to be threatening and is not at risk of becoming physically aggressive.  An understanding of his physical and mental disabilities is sometimes needed to correctly interpret his speech.

I hope this report is useful for assisting service providers in relating to Eric Mapes.

*Mark R. Roth*

Mark Roth, Ph.D.
Clinical Psychologist

cc: Mr. Eric Mapes

- 4 -

## PROOF OF SERVICE

I hereby certify that a true and accurate copy of this Appendix pertaining to this have been included in the Appendix and attached to the  Verified Civil Complaint .

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of this and "all documents" pertaining to the "VERIFIED CIVIL COMPLAINT and Appendices" ( 21 pages Total) was served on the date listed below via Certified U.S. Mail to:

1.United States District Court
 Northern District of Indiana
 5400 Federal Plaza Suite 2300
 Hammond, IN 46320

2.  CABLE ONE d.b.a. SPARKLIGHT, et al
 1314 N 3rd St # 3
 Phoenix, AZ 85004-1749

I hereby declare under penalty of perjury that the above information is complete, correct, and true to the best of my knowledge.

Autographed this ⑧ July 2022

"All Rights Reserved:" "(UCC 1-207; UCC 1-103)"

By Authorized Representatives: Eric Joshua: Mapes , Sui juris

**To the Honorable Court**
**Certified Mail/Confirmation of Delivery/Validation Notice #** 7019  2280  0002  2893  4793

**CABLE ONE D.B.A. SPARKLIGHT, et al**
**Certified Mail/Confirmation of Delivery/Validation Notice #** 7020  3160  0001  0743  0388

- 5 -